IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| INDIANAPOLIS POWER & LIGHT COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE No.: 1:10-CV-0124 SEB-TAB |
| | ) | |
| FULLER MOSSBARGER SCOTT AND MAY ENGINEERS, INC., STANTEC CONSULTING CORPORATION, and STANTEC CONSULTING SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT
## FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, NEGLIGENCE, DAMAGES AND REQUEST FOR JURY TRIAL

Plaintiff, Indianapolis Power & Light Company, by counsel, for its complaint for breach of contract, declaratory judgment, negligence and damages, states:

### Parties

1.      Plaintiff, Indianapolis Power & Light Company ("IPL"), is a corporation duly organized and existing under the laws of the State of Indiana with its principal place of business in Indianapolis, Indiana and at all times relevant to this action, was authorized under the statutes of the State of Indiana to operate as a public utility.

2.      Defendant, Fuller Mossbarger Scott and May Engineers, Inc. ("FMSM") was an engineering and consulting firm organized under the laws of the State of Kentucky, with its principal place of business located in the State of Kentucky.

3.    Stantec Consulting Corporation ("SCC") is an engineering and consulting firm organized and existing under the laws of the State of Delaware with its principal executive offices located in Redmond, Washington.  It is believed that Stantec may have acquired assets and liabilities of FMSM.

4.    Stantec Consulting Services, Inc. ("SCSI") is a New York corporation with its principal place of business in Edmonton, Alberta, Canada.  Upon information and belief, FMSM was purchased by SCSI through a stock purchase and then existed as a wholly-owned subsidiary of SCSI until FMSM was formally dissolved.[1]

**Jurisdiction and Venue**

4.    Diversity of citizenship exists between the plaintiff and each defendant.

5.    The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and jurisdiction is based on 28 U.S.C. §1332.

6.    IPL's request for declaratory judgment in this action is brought under 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure.

7.    Venue of this action is conferred upon this Court pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred, and the property that is the subject of this action is situated, within the boundaries of the United States District Court, Southern District of Indiana, Indianapolis Division.

8.    The jurisdictional and venue requirements of this court have been met.

---

[1] SCSI is a "sister corporation" to SCC, in that they are owned by the same parent corporation, namely Stantec Holdings III, Inc (Delaware).

**Factual Allegations Common to all Counts**

9.     IPL is a public utility with a service territory located principally in Marion County, Indiana.

10.     IPL owns and operates a facility in Morgan County, Indiana known as the Eagle Valley Generating Station ("Eagle Valley").

11.     Eagle Valley is a coal-fired power plant designed, built and operated for the generation of electricity.

12.     A byproduct of the combustion of coal in an electrical generation plant is the ash remaining after the coal is burned.

13.     Ash is removed from the plant through a system of pipes with the use of water to transport the ash out of the plant.

14.     The water/ash effluent is discharged into one of several ash ponds situated adjacent to the plant on property owned by IPL.

15.     IPL owns and maintains five ash ponds at Eagle Valley.  These ponds are referred to as ponds A, B, C, D and E.

16.     The water/ash effluent at Eagle Valley discharged into these ponds is normally contained through a system of dikes which delineate and separate the ponds.

17.     The pipes which transport the ash effluent from the plant to the ponds consist of movable pipes which can be relocated so as to allow the discharge of ash effluent into the various ponds in the manner deemed to be most prudent by IPL personnel.

18.     In February of 2007, a breach in the dikes delineating the boundaries of ponds D and E occurred, causing a release of ash and water onto and across the property owned by IPL and ultimately into the White River which flows adjacent to Eagle Valley.

19.     Thereafter FMSM was retained by IPL to examine and analyze the dike failure and to provide engineering services and construction supervision necessary to repair and improve the dike system so as to avoid future failures.

20.     IPL prepared a Request for Quotation known as #27572 which was disseminated to potential parties interested in undertaking the work to analyze and repair the dike system.  An authentic copy of this request for quotation is attached hereto, made a part hereof, and marked Exhibit "A".

21.     On or about March 7, 2007, FMSM submitted a revised proposal for engineering support services related to ash on dikes D and E.  An authentic copy of this revised proposal is attached hereto, made a part here of, and marked Exhibit B.

22.     Ultimately a contract was entered into by and between IPL and FMSM which consisted of a purchase order issued by IPL and additional terms and conditions to the purchase order and a second purchase/change order which were negotiated between the parties.  An authentic copy of the contract comprised of these documents is attached as Exhibit C.

23.     Thereafter, work commenced on the reconstruction of the dike system in conformance with the plans and specifications prepared by FMSM.

24.     During reconstruction FMSM observed and oversaw the work done to repair and reconstruct the dikes.

25.    The repair and reconstruction of the dikes was completed in October of 2008.

26.    After the work was completed IPL utilized the ash ponds with the newly reconstructed dike system including ash ponds D and E.

27.    Thereafter, on January 30, 2008 a second failure of the dike system containing ash ponds D and E occurred causing the release of millions of gallons of ash and water onto and across the property of IPL and ultimately into the waters of the White River.

28.    The release of the ash and water effluent caused damage to the property of IPL including other portions of the ash dike system, service roads adjacent to the dikes, a canal owned, operated and maintained by IPL which supplies water to the generation station and other property owned by IPL not a part of, or related to, the work of FMSM.

## I. Breach of Contract

29.    IPL incorporates each and every allegation contained in rhetorical paragraphs 1 through 28 above as if same were set forth in full herein.

30.    The contract between the parties required FMSM to perform its services "in accordance with the standards of care and diligence normally practiced by recognized engineering firms in performing services of a similar nature in existence at the time of performance of the services."

31.    The contract further provided that FMSM would be liable during a one (1) year period following the completion of its work where it is shown its work was in error caused solely by FMSM's failure to meet such standards.

32.    FMSM failed to meet applicable engineering standards including, but not limited to, utilizing erroneous assumptions as to the shear strength angle for the ash comprising the dike system as designed by FMSM.

33.    FMSM failed to properly interpret and analyze data from deep borings and lab tests concerning the compaction of the ash in place and failed to properly calculate and/or engineer an acceptable shear strength angle for the dike system.

34.    The utilization of an improper shear angle resulted in dikes that would inevitably fail.  The plans and specifications developed by FMSM resulted in a system of dikes that were "only marginally stable."

35.    The fact that the design of the dikes was faulty is self evident given that on January 30, 2008, little more than two (2) months after the newly designed dikes were completed, the dikes suffered a catastrophic failure nearly identical to the prior failure FMSM was hired to address.

36.    In relevant part the terms and conditions of the contract provide:

> 9.    Seller agrees to indemnify and save harmless Purchaser and any parent corporation and subsidiary thereof from and against any and all liability, loss, cost, attorney fees or expense, of whatsoever nature or character, arising out of or occasioned by any claim or suit for damages, injunction or other relief, on account of injury to or death of any person, or damage to any property, or for Federal, State or local taxes, or for public charges and penalties for failure to comply with Federal, State or local laws or regulations, or with respect to any lien on the furnishing or use of anything protected by patent, trademark or copyright, growing out of or in connection with any act or omission, negligent or otherwise, of Seller, its servants, employee, representatives, agent or subcontractors, in the furnishing of articles or material or in the performance of work hereunder, except when negligence is judicially found to be solely attributable to Purchaser; and Seller further agrees that money due to Seller may be retained by Purchaser until all such claims or suits shall have settled in full and evidence to

that effect is furnished to the satisfaction of Purchaser. This indemnity shall survive delivery of goods or performance of service hereunder. Purchaser may require Seller to defend any suits concerning the foregoing whether justified or not. In case the use of anything protected by patent, trademark or copyright is enjoined, Seller shall at its own expense either (1) procure for Purchaser the right of continued use or (2) replace the same with non-infringing apparatus of equal efficiency at no cost whatsoever to Purchaser.

***

11.    The rights and obligations of Purchaser and Seller shall be governed by the laws of the State of Indiana.

***

13.    This Purchase Order shall constitute the complete agreement between the parties hereto, and is subject to change only by an instrument in writing, prepared and signed by the Purchaser. By shipping the goods or acknowledging receipt of the Purchase Order *or by performing the work provided for in the Purchase Order*, the Seller agrees to the terms and conditions set forth in the Purchase Order. *Any exception or additional terms in Seller's acknowledgement of the Purchase Order are hereby rejected unless otherwise explicitly agreed to in writing by the Purchaser.*
(Emphasis Supplied)

37.    FMSM's to failure to perform in accordance with the standards of care and diligence specified by the contract constitutes a breach of the contract.

38.    FMSM's failure to indemnify and save harmless IPL constitutes a breach of the contract.

39.    The failure caused by FMSM's breach of the contract occurred within the one-year period specified in the contract.

40.    IPL has been damaged by FMSM's breach.

## II. Declaratory Judgment

41.    IPL incorporates each and every allegation contained in rhetorical paragraphs 1 through 40 above as if same were set forth in full herein.

42.    In the alternative and in addition to the relief requested by Count I above IPL asks the court to determine and declare the rights and obligations of the parties as they exist under the contract consisting of several individual but related documents which comprise that contract.

43.    In particular the court should declare and determine that certain attempts on the part of FMSM to limit its liability under the contract were specifically rejected by purchase order number 858040, Revision 1, which specifically rejected "any exceptions or additional terms in Seller's acknowledgment of the purchase order. . . unless otherwise explicitly agreed to in writing by Purchaser. [IPL]"

### III. Negligence

44.    IPL incorporates each and every allegation contained in rhetorical paragraphs 1 through 43 above as if same were set forth in full herein.

45.    In the alternative and in addition to the relief requested by Counts I and II above, IPL states that the errors and omissions of FMSM constitute negligence on the part of FMSM which caused damage to the real and personal property of IPL.

46.    Subsequent to the January 30, 2008 failure, FMSM admitted making one or more errors which resulted in that failure.

**WHEREFORE,** IPL respectfully requests the following relief:

a.    For judgment against FMSM, SCC, and SCSI as its successors in interest for breach of contract;

b.    For a determination and adjudication of the respective rights and obligations of  the parties to this action under the contract;

c.    For judgment against the defendants for the negligence of FMSM;

d.     For an award of compensatory damages sufficient to compensate IPL for the damage it sustained to its real and personal property and for the expenses that  have been incurred or will be incurred in correcting and reconstructing the faulty dike system;

e.     For an award of damages sufficient to compensate IPL for the losses and payments it incurred in responding to environmental actions undertaken and fines, penalties and costs imposed by the Indiana Department of Environmental Management;

f.     For an award of IPL's fees and costs related to this action including without limitation attorney fees;

g.     For an award of prejudgment interest and interest on any judgment entered herein that at appropriate statutory rate; and

h.     For all other relief just and proper in the premises;

### Jury Demand

Pursuant to Rule 38 of the Federal Rules of Civil Procedure IPL Requests a Jury Trial.

NORRIS CHOPLIN & SCHROEDER, LLP

_____
Briane M. House (#8287-30)
Nelson A. Nettles (#16820-53)
Angela S. Field (#27103-49)
Attorney for Plaintiff,
Indianapolis Power & Light Company

NORRIS CHOPLIN & SCHROEDER, LLP
101 West Ohio Street, Ninth Floor
Indianapolis, IN  46204-4213
317/269-9330; 317/269-9338 (fax)
bhouse@ncs-law.com; nnettles@ncs-law.com; afield@ncs-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 18, 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Thomas J. Grau (#8385-49)
Andrew J. Mallon (#23055-49)
Drewry Simmons Vornehm, LLP
8888 Keystone Crossing, Suite 1200
Indianapolis, IN 46240
tgrau@drewysimmons.com
amallon@drewrysimmons.com


*/s/Briane M. House*
Briane M. House